IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANTOINETTE JORDAN,

Plaintiff,

v.

PAMELA BONDI,

Defendants.

CIVIL ACTION
NO. 24-6205

## OPINION

Slomsky, J.                                                    August 28, 2025

I.     INTRODUCTION ................................................................................................. 3

II.    BACKGROUND .................................................................................................. 4

   A.   Factual Background ........................................................................................ 4

      1.   Plaintiff's Employment at the Drug Enforcement Administration ................. 4

      2.   Plaintiff's Request for a Transfer to the Atlanta Field Office ....................... 5

      3.   Plaintiff's Reassignment to the Wire Room ................................................. 5

      4.   Plaintiff's Resignation from the DEA ........................................................... 6

      5.   Plaintiff's Medical Condition ....................................................................... 6

      6.   DEA Equal Employment Opportunity Commission Proceedings ................. 8

      7.   Timeline of Plaintiff's DEA EEOC Complaint ........................................... 11

   B.   Procedural History ....................................................................................... 11

III.   STANDARD OF REVIEW ............................................................................... 14

**A.**  **Motion to Dismiss Standard** ............................................................. 14

**B.**  **Exhaustion of Administrative Remedies** ...................................... 15

**IV.**  **ANALYSIS** ...................................................................................... 16

**A.**  **Plaintiff Adequately Alleged Disability Discrimination in Her DEA EEOC Complaint** .................................................. 17

**B.**  **Plaintiff's Failure to Accommodate Claim is Untimely and Will Be Dismissed** ............................................................ 20

**C.**  **Plaintiff's Retaliation Claim is Timely** .................................... 23

**V.**  **CONCLUSION** ................................................................................ 26

I.    **INTRODUCTION**

Plaintiff Antoinette Jordan ("Plaintiff"), a former Drug Enforcement Administration ("DEA" or "the Agency") agent in the Philadelphia Field Office, brings this case against Defendant United States Attorney General Pamela Bondi ("Defendant"). (Doc. No. 9.) Plaintiff alleges that her former supervisors at the DEA sexually harassed her because she was the only female employee in her unit, and that she was subject to inappropriate comments and behavior at the behest of her supervisors. (Id.) She also alleges that she suffered from serious mental health conditions that adversely affected her employment.

At one point, Plaintiff requested a transfer to the DEA's Atlanta Field Office, which was denied. Then, upon return from her sick leave, Plaintiff learned she was being reassigned to a position in the same building and on the same floor as her former supervisor. A few days later, she contacted a DEA Equal Employment Opportunity ("EEO") Counselor claiming that she was subject to a hostile work environment by being placed so close to this supervisor. She also provided the Agency with documentation from her doctors attesting to her mental health conditions. No informal resolution was reached with the counselor, so Plaintiff filed a formal Complaint with the DEA's Equal Employment Opportunity Commission ("DEA EEOC") branch.

The DEA EEOC investigation lasted nine (9) years.[1] This case followed. Specifically, Plaintiff brings four claims against Defendant in the Amended Complaint: (1) disability discrimination based upon a failure to accommodate her request for a transfer, in violation of the Rehabilitation Act of 1973 (Count I), (2) disability discrimination based upon retaliation after she was reassigned to a different position, in violation of the Rehabilitation Act of 1973 (Count II), (3) sexual harassment based upon retaliation, also for her reassignment, in violation of Title VII of the

---

[1] The reason why the investigation lasted nine (9) years is explained infra.

Civil Rights Act of 1964 (Count III) and (4) constructive discharge (Count IV).  (See id. at 20-27.) In response, Defendant filed a Motion to Dismiss Counts I, II and portions of Count IV of the Amended Complaint.

For the reasons that follow, Defendant's Motion to Dismiss (Doc. No. 11) will be granted in part and denied in part.

## II.    BACKGROUND

### A.  Factual Background[2]

#### 1.  Plaintiff's Employment at the Drug Enforcement Administration

Plaintiff was a Special Agent with the DEA from September 2009 to September 2013.  (Id. at ¶¶ 10, 107.)  From February 2010 to June 2011, Plaintiff was assigned to the Philadelphia Field Office's Mobile Enforcement Team ("MET").  (Id. at ¶ 11.)  During her time with MET, she alleges that she was sexually harassed by Curtis White ("White"), her Group Supervisor, and Robert Belcher, the Acting MET Group Supervisor.  (Id. at ¶¶ 11-15.)  Specifically, Plaintiff was "subjected to inappropriate comments and behavior, including, but not limited to, non-business-related telephone calls during non-work hours, looking at Plaintiff's breasts and buttocks, asking Plaintiff to introduce Mr. Belcher to her girlfriends, and lifting Plaintiff's pant leg, by both Mr. White and Mr. Belcher."  (Id. at ¶ 14.)

In Summer 2011, Plaintiff was reassigned to the Financial Investigations Team ("FIT") of the DEA.  (Id. at ¶ 17.)  Her new supervisors, Special Agent in Charge ("SAC") David Dongilli and Assistant Special Agent in Charge ("ASAC") Robert Niczyporowicz, as well as other individuals in the FIT, were advised about the sexual harassment.  (Id. at ¶¶ 19-20.)  On January

---

[2]    The facts are sourced from the Amended Complaint and are accepted as true at the Motion to Dismiss stage of this case.

29, 2013, Plaintiff filed a formal complaint with her supervisors at FIT.  The DEA's Office of

Professional Responsibility then launched an investigation.  (Id. at ¶¶ 21-22; Doc. No. 9-5 at 29.)

### 2.  Plaintiff's Request for a Transfer to the Atlanta Field Office

Around the same time, Plaintiff learned that White was returning to the DEA's Philadelphia

Office after being away on deployment, and, as a result, she began using extended sick leave due

to anxiety and panic attacks.  (Id. at ¶¶ 24-26.)  Plaintiff took sick leave from January 29, 2013 to

March 10, 2013.  (Id.)  When she returned, Plaintiff requested a transfer to the Atlanta Field Office

and submitted medical documentation which stated that she suffered from "chest pains, shortness

of breath, palpitations, [hypertension], anxiety and panic attacks."  (Id. at ¶¶ 29-31.)  Plaintiff

thereafter took additional sick leave from March 18, 2013 to April 20, 2013 and again from April

25, 2013 to May 18, 2013.  (Id. at ¶¶ 33, 37, 40.)  Plaintiff alleges that even though the DEA

received voluminous medical records from her medical providers supporting her request for a

transfer, the Agency denied the request on May 15, 2013.  (Id. at ¶¶ 38-43.)

### 3.  Plaintiff's Reassignment to the Wire Room

Due to her continuing anxiety, Plaintiff took additional sick leave from July 1, 2023 to July

8, 2013.  (Id. at ¶ 52.)  When she returned, Plaintiff was reassigned to the "Wire Room," which

was a position located in the same building and on the same floor where White worked.  (Id. at ¶

54.)  Additionally, her hours in the Wire Room were changed from the day shift to the night shift

and her prior open cases were taken away from her without justification.  (Id. at ¶ 60.)  And while

the Office of Professional Responsibility's investigation was still ongoing, she continued to "voice

her concerns" about working in the Wire Room and the potential for encountering White, but she

remained assigned to that position.  (Id. at ¶¶ 65, 66.)

Plaintiff also raised concerns to another supervisor, James Erwin, about her placement in

the Wire Room, but Erwin "did not take any action to address Plaintiff's concern and/or reassign

[her] from the Wire Room." (Id. at ¶¶ 72-73.)  As a result, she continued to suffer from symptoms such as anxiety, depression, and fear, and her doctor requested that Plaintiff be limited to light duty work for thirty (30) days.  (Id. at ¶¶ 74-78.)  Plaintiff took additional sick leave from August 8, 2013 to August 26, 2013.  (Id. at ¶ 79.)

### 4.  Plaintiff's Resignation from the DEA

Due to Plaintiff taking additional sick leave, SAC Dongilli requested that Plaintiff be evaluated under the Agency's Suitability Review Protocol ("SRP").  (Id. at ¶ 80.)  On August 21, 2013, Plaintiff was placed on limited duty status and her firearm, badge and credentials were surrendered to the Agency.  (Id. at ¶ 104.)  And, on September 13, 2013, Plaintiff was "forced to tender her resignation" from the DEA.  (Id. at ¶ 107; Doc. No. 9-5 at 231.)

### 5.  Plaintiff's Medical Condition

Plaintiff alleges that Defendant was on notice of her serious mental health conditions.  In the Amended Complaint, Plaintiff submits the following information and medical documentation was relayed to the DEA:

(1) On February 1, 2011, Plaintiff was hospitalized at Delaware County Memorial Hospital ("DCMH") for chest pain, high blood pressure and anxiety.  (Doc. No. 9-1 at 81.)

(2) On April 25, 2013, Plaintiff saw Dr. Sherri Zhang and complained of anxiety and depression because of her stressful work environment.  (Doc. No. 9 at ¶ 36.)

(3) On April 26, 2013, Plaintiff submitted medical documentation to Dr. Pamela Adams, the Agency's Health Services Representative, supporting her transfer request to the Atlanta Field Office.  (Doc. No. 9 at ¶ 38.)

(4) On April 29, 2013, Plaintiff gave the DEA medical records from Dr. Xiaobin Li, another one of Plaintiff's medical providers, attesting to her anxiety and depression. (Id. at ¶ 39.)

6

(5) On May 3, 2013, Plaintiff provided medical documentation from Dr. Snapper, Plaintiff's cardiologist.  According to the Amended Complaint:

> Dr. Snapper's impressions indicated that Plaintiff's chest discomfort, dizziness, shortness of breath and palpitations were likely related to anxiety and further indicated that Plaintiff was under a lot of stress in her life and a high stress job.

(Id. at ¶ 41.)

(6) On May 3, 2013, Dr. James F. Smith, Plaintiff's psychologist, sent Dr. Adams medical records which "recounted the basis for his strong recommendation that Plaintiff move to another DEA office, preferably in Atlanta, to regain her effectiveness."  (Id. at ¶ 42.)

Additionally, the following doctors' notes were submitted to the DEA around the time that Plaintiff was reassigned to the Wire Room on July 8, 2013:

(7) On July 8, 2013, Plaintiff was seen again by Dr. Li who diagnosed her with chest pain, palpitations and anxiety.  (Doc. No. 9-2 at 18.)  Additionally, the medical note states that Plaintiff cannot lift, push or pull more than 15 pounds and placed on light duty work.  (Id.)

(8) On August 6, 2013, Dr. Zhang wrote a letter to Plaintiff's employer which stated the following:

> Mrs. Antoinette Jordan came to see me twice on 04/25/13 and 08/02/13. She complains [of] anxiety and depression because of the stressful work environment. Her symptoms include fear, nervousness, chest pain, shortness of breath, headaches, crying, fatigue, impatience, insomnia. She is prescribed with Lexapro 10mg, daily. From last evaluation I agree Mrs. Jordan stays in light duty office work for her mental well being for one month. I am also informed that Mrs. Jordan sees Dr. Smith (psychologist), Dr. Li (internist), and Dr. Snapper (cardiologist). My Diagnosis for her condition is Anxiety NOS 300.00.

(Doc. No. 9-1, at 69.)

(9) On August 6, 2013, Dr. Li submitted a "Certification of Health Care Provider for
Employee's Serious Health Condition" form to the U.S. Department of Labor which
noted Plaintiff's medical ailments as follows:

> "[Plaintiff] has frequent chest pain, palpitations, shortness of breath,
> elevated blood pressure, back pain, shoulder pain. She is not able to
> concentrate on her work, unable to tolerate stress, and is very anxious. She
> is under evaluation for coronary heart disease HTN and anxiety/panic
> disorder.

(Doc. No. 9-1 at 72.)  Additionally, when asked "is the employee unable to perform any
of his/her job functions due to the condition," Dr. Li checked "Yes."  (Id.)

### 6.  DEA Equal Employment Opportunity Commission Proceedings

As noted, on July 12, 2023, Plaintiff filed a formal Complaint with the DEA's EEOC
branch ("DEA EEOC").  (Doc. No. 9-1 at 10.)  In the Complaint of Discrimination Form, under
the "Check Below Why You Believe You Were Discriminated Against" section, Plaintiff checked
the boxes for "Female," "Sexual Harassment," and "Gender Identity."  (Id.)  She did not check
the "Disability" box.  In the "Explain How You Believe You Were Discriminated Against . . ."
section, Plaintiff stated the following:

> Please view attached letter.  I feel that I was retaliated against in regards to my
> feelings and harassment in the work place as a result when I returned to work from
> all of sick leave.  I was taken out of my assigned building (while on light duty) and
> placed in the same area [unintelligible] with the GS I had allegations against in the
> past, regardless of me explaining my concerns to [my] GS in a face-to-face meeting
> and via email.

(Id. at 10.)  Specifically, the email referenced above was sent to James Erwin, Plaintiff's supervisor,
on July 15, 2013, which said:

> Jim:
>
> Just wanted to make sure you received the attached copies of my doctor's note like
> we discussed earlier today. I haven't heard back from SA Trainor, but I will report
> to the wire room tomorrow morning at 9 am per our conversation as directed by our
> ASAC (after addressing my concerns.) Have a good evening and God Bless.

(Doc. No. 9-1 at 76; Doc. No. 9-5 at 256.)

Additionally, the letter attached to her Complaint of Discrimination Form states in relevant

part:

> . . . On May 15, 2013, I was denied a second Hardship Request, to be moved out of the Philadelphia, PA, Field Division to the Atlanta Field Division, when adequate detailed medial information was provided to the career board. I feel that I didn't receive a fair decision and or explanation. As a result of enduring work place issues I provided the government with medical documentation of issues sustained as a result of working under unfair work conditions, in addition to medical professionals providing detailed information also.
>
> In December of 2012, I met with Philadelphia's new Special Agent in Charge (SAC) in regards to me trying to transfer out of the Philadelphia Field Division. During my initial meeting with the SAC, I expressed a deep concern to transfer out of Philadelphia's Field Division to Atlanta's Field Division because my husband just accepted a job in Atlanta, my children [were] there and I needed to relocate there (not mentioning at this time in my meeting with the SAC and ASAC that as an agent with the Philadelphia Division, that for three years I dealt with harassment by my former GS who at th[e] time of this meeting was deployed out of the division for a year), in addition to harassment from an Acting GS/Senior Agent. During this meeting I explained that I dealt with[] the lack of support from other agents and team members in Philadelphia, being put in dangerous situations that go against agency policy, being discriminated against because I was the only female agent in the group, and placed in uncomfortable situations by my male co-workers.
>
> ***
> . . . When I returned off of sick [leave], I was told not to work on my cases, at all because I was on light duty, but made to work on other groups cases. My Official Government Vehicle (OGV) that I had for approximately 3 years was taken away and I was given an older model car with major maintenance issues, warning lights, flashing break lights, etc.
>
> During my sick leave I received email messages from my current supervisor, on one occasion I had to return to work sick because my supervisor emailed m[e] stating that my doctors note did not indicate that I could not do administrative work in the office, it just stated I could not do enforcement activities (which it did not) so I returned for a week sick, for fear of losing my job and out the next week on sick leave.
>
> I have been out of work on sick leave since January 2013, due to anxiety and panic attacks as a result of working the in Philadelphia Division. I do not have annual

leave or sick leave, denied additional sick leave and was on leave without pay (FMLA). . . .

(Id. at 11, 12.)

On September 10, 2013, the DEA's EEO Officer requested that the DEA EEOC dismiss Plaintiff's Complaint for failure to state a claim. (Doc. No. 1 at ¶ 106; Doc. No. 9-1 at 31.) The Officer submitted a second request to dismiss Plaintiff's Complaint on September 20, 2013, and on September 27, 2013, the DEA EEOC dismissed her Complaint. (Id. at ¶¶ 109-110; Doc. No. 9-1 at 32; Doc. No. 9-1 at 33-36.) Plaintiff filed an appeal to the EEOC's Office of Federal Operations (the "Office of Federal Operations"). (Id. at ¶ 111; Doc. No. 9-1 at 65.) On November 14, 2014, the Office of Federal Operations reversed the DEA EEOC's dismissal and ordered that Plaintiff's Complaint be remanded for further investigation. (Id. at ¶ 112; Doc. No. 9-1 at 42-46.)

On February 5, 2016, the DEA EEOC issued a second decision that Plaintiff failed to establish a claim for discrimination. (Id. at ¶ 114; Doc. No. 9-4 at 42-50.) Plaintiff again appealed. (Id. at ¶ 115.) On June 19, 2018, the Office of Federal Operations again vacated the DEA EEOC's decision and remanded for further investigation. (Id. at ¶ 116; Doc. No. 9-4 at 26-34.)

On August 23, 2018, the DEA EEOC concluded its third investigation, and this time before a decision was rendered, Plaintiff requested a hearing before an Administrative Judge for the EEOC. (Id. at ¶ 117.) Additionally, on February 3, 2020, Plaintiff filed a Motion to Amend the DEA EEOC Complaint, seeking to include a claim for disability discrimination which was unopposed by the DEA. (Id. at ¶ 118; Doc. No. 9-2 at 2-16; Doc. No. 9-3.) On August 24, 2022, the Administrative Judge issued an Order granting the DEA EEOC's Motion for Summary Judgment and the DEA EEOC issued a third decision adopting the Administrative Judge's Order. (Id. at ¶¶ 120, 121.) On October 26, 2022, Plaintiff filed a third appeal to the Office of Federal Operations, but this time it affirmed the DEA EEOC's decision. (Id. at ¶¶ 122-123.)

### 7. Timeline of Plaintiff's DEA EEOC Complaint

The following timeline summarizes the relevant dates at issue in the Motion to Dismiss regarding Plaintiff's allegations to the DEA and the EEOC:

- December 2012:  Plaintiff notified SAC David Dongilli, and ASAC Robert Niczyporowicz about the sexual harassment she received from Curits White and Robert Belcher.

- January 29, 2013:  Plaintiff lodged a complaint of sexual harassment with SAC Dongilli and ASAC Nicyporowicz.

- January 29, 2013 to March 10, 2013:  Plaintiff took sick leave.

- March 11, 2013:  Plaintiff submitted an accommodation request to be transferred to the Atlanta Field Office.

- March 18, 2013 to April 20, 2013:  Plaintiff took additional sick leave.

- April 25, 2013 to May 18, 2013:  Plaintiff took additional sick leave.

- May 15, 2013:  The DEA denied Plaintiff's transfer request to the Atlanta Field Office.

- July 1, 2013 to July 8, 2013:  Plaintiff took additional sick leave.

- July 8, 2013:  Plaintiff was informed of her reassignment to the Wire Room.

- July 11, 2013:  Plaintiff contacted the DEA EEO Counselor.

- August 15, 2013:  Plaintiff filed a formal Complaint of discrimination to the DEA EEOC.

### B. Procedural History

On March 28, 2025, Plaintiff filed an Amended Complaint.  (Doc. No. 9.)  In the Amended Complaint, she brings four claims for relief:  (1) disability discrimination based upon a failure to accommodate her request for a transfer, in violation of the Rehabilitation Act of 1973 (Count I), (2) disability discrimination based upon retaliation due to her reassignment to the Wire Room, in violation of the Rehabilitation Act of 1973 (Count II), (3) sexual harassment based upon retaliation

11

also due to her reassignment, in violation of Title VII of the Civil Rights Act of 1964 (Count III), and (4) constructive discharge (Count IV).[3]  (Id.)

Specifically, in Count I, the disability discrimination claim for failure to accommodate, Plaintiff alleges that Defendant failed to accommodate her disability by denying her transfer request to the Atlanta Field Office.  (See Doc. No. 9 at ¶¶ 125-135.)  For example, the Amended Complaint states:

> 127.  Plaintiff was qualified to perform the essential duties of her position with a reasonable accommodation. Specifically, Plaintiff was qualified and able to perform the essential duties of her role as a Special Agent if provided with a transfer to the Atlanta Filed Office, out of the vicinity of Mr. White, the individual Plaintiff accused of sexually harassing her.
>
> 128.  Plaintiff properly requested an accommodation where she submitted, on multiple occasions, medical certifications and documentation detailing Plaintiff's diagnoses, symptoms, and need for medical leave and a change in her work environment. Plaintiff began providing such documentation as early as January 2013.
>
> 129.  Plaintiff's psychiatrist spoke with the Agency's Medical Representative and recommended that Plaintiff transfer to the Atlanta Field Office.
>
> 132.  Defendant failed to engage in a good faith interactive process to accommodate Plaintiff, as it denied Plaintiff's Medical Hardship request to transfer to the Atlanta Field Office, despite receiving voluminous medical documentation from Plaintiff's medical providers recommending same, transferred Plaintiff to the Wire Room to work in close proximity to Mr. White, the individual she accused of harassing her, and failed to offer Plaintiff any alternative accommodation that would enable Plaintiff to perform the essential functions of her position.

(Id.)

Next, in Count II, the disability discrimination claim for retaliation under the Rehabilitation Act, Plaintiff alleges that Defendant retaliated against her because she requested an accommodation, submitted medical documentation attesting to her medical disability and

---

[3]  At the hearing on the Motion to Dismiss held on July 2, 2025, with counsel for the parties, Plaintiff conceded that Count IV, the constructive discharge claim, is not an independent claim for relief. (Doc. No. 19 at 25:7-23.)  Therefore, Count IV will be dismissed.

exhausted her sick leave.  (Id. at ¶ 143.)  She further alleges that Defendant reassigned her to the Wire Room which was "in the same building as and in close proximity to the individual that she lodged sexual harassment complaints against, Mr. White.  Upon reassigning Plaintiff to the Wire Room, Defendant also altered Plaintiff's hours."  (Id. at ¶ 144.)  Additionally, Plaintiff was subject to a Suitability Review Protocol ("SRP") exam, which required that she undergo a medical examination, was placed on limited duty status, and required to surrender her DEA issued firearms, badge, and credentials.  (Id. at ¶ 145.)

Lastly, in Count III, the sexual harassment claim for retaliation under Title VII, Plaintiff claims that, as a result of her lodging complaints against her supervisors for sexual harassment, she was reassigned to the Wire Room.  (Id. at ¶ 153.)  She also alleges that because she filed a DEA EEOC Complaint, she was assigned "to work in close proximity to friends, colleagues, and subordinates of Mr. White, some of whom were involved in an ongoing OPR investigation into Plaintiff's complaints of sexual harassment by Mr. White while the investigation was still ongoing" and her hours were changed from the day shift to the night shift.  (Id. at ¶¶ 155, 156.)

On April 11, 2025, Defendant filed a partial Motion to Dismiss the Amended Complaint.  (Doc. No. 11.)  Namely, Defendant argues that Plaintiff failed to administratively exhaust any claim for disability discrimination and accordingly seeks dismissal of Counts I and II, the claims brought under the Rehabilitation Act.  (Id. at 14.)  Defendant also argues that, even if the disability discrimination claims were exhausted, they are nevertheless time barred.  (Id. at 15.)  Defendant did not move to dismiss Count III, the retaliation claim for reporting her sexual harassment under Title VII.

On April 25, 2025, Plaintiff filed a Response in Opposition to Defendant's Motion to Dismiss.  (Doc. No. 12.)  On May 2, 2025, Defendant filed a Reply.  (Doc. No. 13.)  On July 2, 2025, a hearing on the Motion to Dismiss was held with counsel for the parties.  (Doc. No. 18.)

Defendant's Motion to Dismiss (Doc. No. 11) is now ripe for disposition.

### III.    STANDARD OF REVIEW

#### A.  Motion to Dismiss Standard

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009).  After Iqbal it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss.  Id. at 678; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).  "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Tatis v. Allied Interstate, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting Iqbal, 556 U.S. at 678). Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Iqbal, 556 U.S. at 678).  Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Iqbal, 556 U.S. at 678).

Applying the principles of Iqbal and Twombly, the Third Circuit Court of Appeals in Santiago v. Warminster Township, set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a Rule 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

629 F.3d 121, 130 (3d Cir. 2010) (alteration in original) (quoting <u>Iqbal</u>, 556 U.S. at 675, 679). The inquiry is normally broken into three parts: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." <u>Malleus v. George</u>, 641 F.3d 560, 563 (3rd Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief; it must "show" such an entitlement with its facts. <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing <u>Phillips v. Cnty. of Allegheny</u>, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" <u>Iqbal</u>, 556 U.S. at 679 (second alteration in original) (citation omitted). The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Id.</u>

### B. Exhaustion of Administrative Remedies

The Rehabilitation Act of 1973 prohibits discrimination on the basis of disability for entities that receive federal funding, i.e., the Drug Enforcement Administration. Section 504 of the Rehabilitation Act provides:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency . . . .

29 U.S.C. § 794(a). "A federal employee seeking relief under the Rehabilitation Act must exhaust administrative remedies prior to filing suit." <u>Campbell v. United States</u>, 375 F. App'x 254, 258

(3d Cir. 2010); see also Freed v. Consol. Rail Corp., 201 F.3d 188, 191 (3d Cir. 2000). The process

for exhausting administrative remedies is as follows:

> To exhaust administrative remedies for an employment discrimination claim against a federal employer, a plaintiff must comply with EEOC regulations and administrative processes. First, an employee who believes they have been discriminated against on the basis of an enumerated protected class – including for a disability or related medical condition – must "consult a[n EEO] Counselor prior to filing a complaint in order to try to informally resolve the matter," and must do so within "45 days of the date of the matter alleged to be discriminatory." 29 C.F.R. § 1614.105(a)(1). Second, if the complaint cannot be resolved informally, a plaintiff must file a formal complaint with the relevant federal agency within 15 days of receiving a Notice of Right to File Complaint from the EEO counselor, explaining that the matter cannot be resolved informally. 29 C.F.R. § 1614.106.

Reid v. Veterans Admin., Pittsburgh, PA, No. 2:22-CV-01025-CBB, 2025 WL 1798137, at *6

(W.D. Pa. June 30, 2025). Ordinarily, "[w]hile the language of [Federal Rule of Civil Procedure]

8(c) indicates that a statute of limitations defense cannot be used in the context of a Rule

12(b)(6) motion to dismiss, an exception is made where the complaint facially shows

noncompliance with the limitations period . . . ." Oshiver v. Levin, Fishbein, Sedran & Berman,

38 F.3d 1380, 1384 n.1 (3d Cir. 1994), rev'd on other grounds by Rotkiske v. Klemm, 890 F.3d

422 (3d Cir. 2018) (en banc). And failure to exhaust an administrative remedy renders a complaint

subject to dismissal under Federal Rule of Civil Procedure 12(b)(6). See Wilson v. MVM,

Inc., 475 F.3d 166, 173, 175 (3d Cir. 2007).

## IV.    ANALYSIS

In the Motion to Dismiss, Defendant seeks dismissal of the claims brought under the

Rehabilitation Act: failure to accommodate (Count I) and retaliation (Count II), which are the

claims that form the basis of Plaintiff's disability discrimination. (See Doc. No. 11.) First,

Defendant avers that Plaintiff failed to exhaust any claim for disability discrimination in her DEA

EEOC Complaint and the resulting investigation. (See generally Doc. No. 11.) Second, Defendant

contends that Plaintiff's claims for disability discrimination are nevertheless untimely.  (Id. at 15.)
The Court will address each argument in turn.

### A.   Plaintiff Adequately Alleged Disability Discrimination in Her DEA EEOC Complaint

Defendant contends that Plaintiff did not allege disability discrimination during her initial contact with the EEOC Counselor or in her formal DEA EEOC Complaint, and thus she did not adequately exhaust her claims under the Rehabilitation Act.  (Id. at 14.)

As noted, an employee must exhaust administrative remedies with the EEOC prior to bringing a federal court case.  Campbell, 375 F. App'x at 258.  To determine whether a plaintiff has exhausted her remedies, courts assess whether the acts alleged in the plaintiff's federal suit are fairly within the scope of the prior EEOC complaint or the ensuing investigation.  Morrow v. S. Side Area Sch. Dist., No. CV 2:22-1142, 2023 WL 6260107, at *3 (W.D. Pa. Sept. 25, 2023) (citing Waiters v. Parsons, 729 F.2d 233, 237 (3d Cir. 1984)); see also Simko v. United States Steel Corp, 992 F.3d 198, 207 (3d Cir. 2021).  The scope of the original charge should be liberally construed.  Morrow, 2023 WL 6260107, at *3.  And "[a]lthough this standard does not necessarily preclude a plaintiff from asserting a claim for the mere failure to check a box on an EEOC Charge Form, it does prevent a plaintiff from 'greatly expand[ing] an investigation simply by alleging new and different facts when [s]he [is] contacted by the Commission following [her] charge.'" Barzanty v. Verizon Pa., Inc., 361 F. App'x 411, 414 (3d Cir. 2011) (alterations in original) (quoting Hicks v. ABT Assocs., 572 F.2d 960, 967 (3d Cir. 1978)).

Here, viewing the allegations in the Amended Complaint and the allegations set forth in the DEA EEOC Complaint in the light most favorable to her, Plaintiff alleged the disability discrimination claims in her DEA EEOC Complaint.  First, according to the Amended Complaint, Plaintiff spoke to the EEO Counselor and requested a medical accommodation.  (See Doc. No. 9

at ¶ 68.)    In the DEA EEO Counselor's Report, while she notes that the basis for alleged discrimination is "Reprisal (OPR sexual harassment)," the Counselor also makes note that Plaintiff was on sick leave without pay for six (6) months and that when she returned, her doctor recommended that Plaintiff be assigned to a desk job due to her mental health condition.  (Doc. No. 9-1 at 13.)

Second, her disability discrimination claims are within the scope of the DEA EEOC investigation because her formal Complaint put the Agency on notice that Plaintiff was suffering from a disability.  Specifically, the DEA EEOC Complaint states that she had a "face-to-face" conversation with James Erwin, one of Plaintiff's supervisors, about the harassment and resulting mental health troubles, as well as her concerns about the reassignment to the Wire Room.  This was followed up with in an email confirming that Erwin was told about Plaintiff's medical condition:

> Jim:
>
> Just wanted to make sure you received the attached copies of my doctor's note like we discussed earlier today. I haven't heard back from SA Trainor, but I will report to the wire room tomorrow morning at 9 am per our conversation as directed by our ASAC (after addressing my concerns.) Have a good evening and God Bless.

(Doc. No. 9-1 at 76; Doc. No. 9-5 at 256.)   Additionally, the letter attached to the DEA EEOC Complaint states the following:

> . . . As a result of enduring workplace issues I provided the government with medical documentation of issues sustained as a result of working under unfair work conditions, in addition to medical professionals providing detailed information also.
>
> ***
>
> During my sick leave I received email messages from my current supervisor, on one occasion I had to return to work sick because my supervisor emailed m[e] stating that my doctors note did not indicate that I could not do administrative work in the office, it just stated I could not do enforcement activities (which it did not) so I returned for a week sick, for fear of losing my job and out the next week on sick leave.

> I have been out of work on sick leave since January 2013, due to anxiety and panic attacks as a result of working the in Philadelphia Division. I do not have annual leave or sick leave, denied additional sick leave and was on leave without pay (FMLA). . . .

(Doc. No. 9-1 at 11-12.)

Furthermore, in Plaintiff's first appeal to the EEOC Office of Federal Operations, dated

October 25, 2013, she stated the following:

> In July of 2013, I expressed my concerns about being assigned to the wire room to my supervisor James Erwin in person and via email. I explained in detailed that I was afraid to report to my newly assigned duty station, due to an active investigation that management was well aware of. Group Supervisor (GS) Erwin stated that he would contact ASAC Bobby Nix and make him aware of my concerns. The following week, I received notification to Special Agent Pat Trainer as my point of contact; per ASAC Bobby Nix request. I again explained that by putting me in the same area with the person I accused could be detrimental to my health. My concerns were ignored; so to keep my employment with the DEA I complied by reporting as instructed.

(Doc. No. 9-1 at 67.)

Most importantly, Plaintiff provided the DEA EEOC with extensive medical documentation from several medical providers during the initial complaints brought to the Agency, as well as during the EEOC proceedings. Thus, construing the allegations in the Amended Complaint in the light most favorable to Plaintiff at the motion to dismiss stage, Plaintiff has sufficiently alleged that the DEA was on notice that she had a medical condition for which she was discriminated against based upon the allegations set forth in the DEA EEOC Complaint and the EEOC supplemental investigation. Therefore, her disability discrimination claims were properly pled.

Despite the above recitation of notice being given by Plaintiff of her disability, Defendant avers that Plaintiff did not provide notice because she did not check the "disability" box in her DEA EEOC Complaint. (Doc. No. 11 at 11.) But just because the box on the formal complaint

19

was not checked does not mean that a discrimination claim cannot reasonably be inferred based on the actual allegations in the DEA EEOC Complaint.  For example, in <u>Fugarino v. University Services</u>, the defendants contended that in the plaintiff's EEOC charge, the only cause of discrimination was "sex" and not "retaliation" because the retaliation box was unchecked.  123 F. Supp. 2d 838, 841 (E.D. Pa. 2000).  But the court found the defendant's interpretation of the EEOC charge was overly restrictive and that a retaliation claim could "reasonably be expected to grow out of" the plaintiff's charge.  <u>Id.</u>  Likewise, in this case, Plaintiff's disability discrimination claims can reasonably be expected to grow out of the claims raised in her DEA EEOC Complaint. Moreover, Plaintiff was not represented by counsel when she filed the formal DEA EEOC Complaint, and a liberal reading of the Complaint reveals that the Agency was on notice of Plaintiff's mental health condition.

Therefore, Plaintiff properly exhausted her disability discrimination claims.

### B.  Plaintiff's Failure to Accommodate Claim is Untimely and Will Be Dismissed

Alternatively, Defendant argues that even if Plaintiff's disability discrimination claims were exhausted in the DEA EEOC Complaint, they are nevertheless untimely.  (Doc. No. 11 at 15.)

Under 29 C.F.R. § 1614.105(a)(1), administrative exhaustion requires that the employee initiate contact with an EEO Counselor within forty-five (45) days of the alleged discriminatory or retaliatory action.  Compliance with the 45-day period in which to contact the EEO Counselor is mandatory.  <u>Wadhwa v. Sec'y Dep't of Veterans Affairs</u>, 396 Fed. App'x 881, 885 (3d Cir. 2010); <u>Robinson v. Dalton</u>, 107 F.3d 1018, 1021 (3d Cir. 1997).

Here, Plaintiff's disability discrimination claim based on failure to accommodate (Count I) relates to her request for a transfer to the Atlanta Field Office.  In the Amended Complaint,

paragraphs 29 through 51 allege that Plaintiff requested a transfer due to her anxiety and stress and that she submitted medical documentation to the Agency supporting the request. (See, e.g., Doc. No. 9 at ¶ 29 ("In light of the hostile work environment and her anxiety and stress, Plaintiff began requesting a transfer to the Atlanta Field Office as a reasonable accommodation as early as March 11, 2013."); id. at ¶ 31 ("With her March 11, 2013 accommodation request [to be transferred], Plaintiff submitted medical documentation from her medical provider, Dr. Xiaobin Li, M.D., which stated that Plaintiff suffered from chest pains, shortness of breath, palpitations, HTN [hypertension], anxiety and panic attacks."); id. at ¶ 34 ("On April 15, 2013, in support of her request for a transfer to Atlanta as a reasonable accommodation, Plaintiff executed and submitted to the Agency a medical release which permitted the Agency to obtain medical records relevant to Plaintiff's request for accommodations from three of her medical providers.").)

Additionally, under Count I, "Failure to Accommodate—Rehabilitation Act of 1973," Plaintiff states the following as the basis for her claim for relief:

127. Plaintiff was qualified to perform the essential duties of her position with a reasonable accommodation. Specifically, Plaintiff was qualified and able to perform the essential duties of her role as a Special Agent if provided with a transfer to the Atlanta Filed Office, out of the vicinity of Mr. White, the individual Plaintiff accused of sexually harassing her.

128. Plaintiff properly requested an accommodation where she submitted, on multiple occasions, medical certifications and documentation detailing Plaintiff's diagnoses, symptoms, and need for medical leave and a change in her work environment. Plaintiff began providing such documentation as early as January 2013.

129. Plaintiff's psychiatrist spoke with the Agency's Medical Representative and recommended that Plaintiff transfer to the Atlanta Field Office.

132. Defendant failed to engage in a good faith interactive process to accommodate Plaintiff, as it denied Plaintiff's Medical Hardship request to transfer to the Atlanta Field Office, despite receiving voluminous medical documentation from Plaintiff's medical providers recommending same, transferred Plaintiff to the Wire Room to work in close proximity to Mr. White, the individual she accused of harassing her, and failed to offer

> Plaintiff any alternative accommodation that would enable Plaintiff to perform the essential functions of her position.

(Id. at ¶¶ 127-132.)

These allegations identify the basis for Plaintiff's failure to accommodate claim in Count I. The accommodation sought was a transfer request to the Atlanta Field Office, which was denied on May 15, 2013. Plaintiff was required to contact the DEA EEO Counselor for the claims relating to her request for a transfer within forty-five (45) days of May 13, 2013, which was June 29, 2013. Because she did not contact the Counselor until July 11, 2013, Count I must be dismissed because she did not raise this claim within the forty-five (45) day timeframe, and instead raised it fifty-six (56) days after the discriminatory act occurred.[4]

In Plaintiff's Opposition to the Motion to Dismiss, she argues that her disability discrimination claims are "continuing violations and, as such, cannot reasonable be deemed untimely." (Doc. No. 12 at 17.) The equitable exception to the timely filing requirement, otherwise known as the tolling of the statute of limitations, is covered by the continuing violation doctrine. If conduct that gives rise to a claim is ongoing, and acts occur within the limitations period, the statute of limitations period is tolled. The doctrine is described in Brenner v. Local 514, United Brotherhood of Carpenters & Joiners of America:

---

[4] The DEA did allow Plaintiff to amend her DEA EEOC Complaint to add disability discrimination when her appeal was before the Administrative Law Judge. On February 3, 2020, Plaintiff filed a Motion to Amend "to include an additional basis of disability and/or disability discrimination where Agency failed to accommodate Complainant's request for accommodation." (Doc. No. 9-2 at 10.) Specifically, the Motion to Amend states that "[The] Agency failed to accommodate [Plaintiff] when it reassigned her to the Wire Room, which [that] assignment led to her constructive discharge (disability/reprisal)." (Id. at 11.) Thus, the accommodation asserted in the Motion to Amend related to Plaintiff's reassignment to the Wire Room. However, the failure to accommodate asserted in the Amended Complaint relates to Plaintiff's request for a transfer to the Atlanta Field Office. Therefore, her Motion to Amend the DEA EEOC Complaint does not state the same allegations made in the Amended Complaint.

> In most federal causes of action, when a defendant's conduct is part of a continuing practice, an action is timely <u>so long as the last act evidencing the continuing practice falls within the limitations period</u>; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred.

927 F.2d 1283, 1295 (3d Cir. 1991) (emphasis added). However, the United States Supreme Court has held that this doctrine may not preserve time barred claims for "discrete discriminatory acts." <u>See</u> <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 113 (2002). In <u>Nat'l R.R. Passenger Corp.</u>, the Supreme Court identified discrete acts by employers as "termination, failure to promote, denial of transfer, or refusal to hire." <u>Id.</u> at 114.

Here, the continuing violation doctrine does not apply because Plaintiff's failure to accommodate claim is a "discrete discriminatory act." And because she did not contact the EEO counselor within forty-five (45) days, any allegations resulting from that denial are untimely. Therefore, Count I will be dismissed.

### C. Plaintiff's Retaliation Claim is Timely

However, Plaintiff's retaliation claim under the Rehabilitation Act (Count II) is timely. Like the failure to accommodate claim, Plaintiff's retaliation claim under the Rehabilitation Act is subject to the same requirement that she contact the DEA EEOC Counselor within forty-five (45) days from the date of the alleged wrongful conduct. <u>Estacio v. Postmaster Gen. of U.S.</u>, 344 F. App'x 810, 813 (3d Cir. 2009); <u>Aldrich v. Garland</u>, No. 24-CV-847, 2025 WL 97626, at *3 (E.D. Pa. Jan. 14, 2025) (citing 29 C.F.R. § 1614.105(a)(1)).

In the Amended Complaint, Plaintiff alleges in part that she was subject to retaliation for submitting medical documentation to the DEA, using sick leave and filing a formal Complaint with the DEA EEOC. She further claims that she was retaliated against by being reassigned to the Wire Room, which as noted above was a position located close to her supervisor Curits White. For example, the Count II of the Amended Complaint states in relevant part:

137.  Plaintiff submitted voluminous medical documentation in support of her request for accommodation between January 2013 through her forced resignation in September 2013, which the Agency received.

138.  Plaintiff's submission of medical documentation in support of her request for accommodation constitutes protected activity under the Rehabilitation Act.

139.  Plaintiff also engaged in protected activity under the Rehabilitation Act when she used sick and annual leave, and ultimately exhausted her accrued leave, in connection to her disabilities and as a direct and proximate result of the Agency's failure to accommodate her.

140.  Plaintiff further engaged in protected activity under the Rehabilitation Act on August 15, 2013 when she filed her Formal Complaint with the EEOC in the instant matter.

        ***

143.  As a result of engaging in protected activity under the Rehabilitation Act, Defendant staff reassigned Plaintiff to work in the same building as and in close proximity to the individual that she lodged sexual harassment complaints against, Mr. White.  Upon reassigning Plaintiff to the Wire Room, Defendant also altered Plaintiff's hours.

(Doc. No. 6 at ¶¶ 137-143.)  Construing these allegations in the light most favorable to her, Plaintiff's retaliation claim in Count II stems from her production of medical documents to Defendant, use of sick leave, reassignment to the Wire Room and subsequent filing of the DEA EEOC Complaint.  It is unclear from the face of the Amended Complaint which documents and sick leave Plaintiff relies upon in support of her retaliation claim, but there are allegations made in the Amended Complaint as to these activities that would be timely.  For example, on July 8, 2013, Plaintiff submitted medical documentation from Dr. Li who diagnosed her with chest pain, palpitations and anxiety.  (Doc. No. 9-2 at 18.)  Additionally, the medical note states that Plaintiff cannot lift, push or pull more than 15 pounds and that she should be placed on light duty work.  (Id.)  This production is timely since it occurred three (3) days prior to her contacting the DEA EEOC Counselor.  Moreover, Plaintiff took some sick leave in July 2013 that would also be timely.

(Doc. No. 9 at ¶ 52.)  And, most importantly, as to her reassignment to the Wire Room on July 8, 2013, this claim is timely because Plaintiff contacted the DEA EEOC Counselor on July 11, 2013, just three (3) days after the reassignment and thus within the forty-five (45) day limitations period.

Furthermore, a review of the DEA EEOC Complaint shows that Plaintiff alleged that her grievances emanated from her transfer to the Wire Room.  For example, in the August 6, 2013 Report, EEO Counselor Jennifer Austin documented that Plaintiff's EEOC claim was based on her reassignment to the Wire Room:

> The aggrieved party, here after referred to as SA Jordan believes her rights were violated **when she was assigned to the wire room on July 8, 2013**. SA Jordan claims that this assignment creates a hostile work environment by forcing her to share a hallway and elevator with an individual she claims sexually harassed her. SA Jordan claims she has been subjected to a hostile work environment based on reprisal for filing an OPR complaint of sexual harassment against her former supervisor.

(Doc. No. 9-1 at 13 (emphasis added).)  And, as previously stated, Plaintiff's claims for disability discrimination were adequately pled in her DEA EEOC Complaint and the Agency was on notice of her disability.  Moreover, the DEA allowed Plaintiff to amend her DEA EEOC Complaint to add disability discrimination relating to her transfer to the Wire Room.  Thus, Plaintiff's retaliation claim is timely at the motion to dismiss stage.[5]

---

[5] At the hearing on the Motion to Dismiss, Plaintiff argued that both Count I and Count II related to Plaintiff's transfer to the Wire Room.  However, a review of the Amended Complaint and Count I specifically identifies Plaintiff's request for an accommodation as her request to be transferred to the Atlanta Field Office.  (See Doc. No. 9 ¶¶ at 127-132.)  And, as noted supra, this claim is untimely.  But in reviewing the allegations set forth in Count II and construing the Amended Complaint in the light most favorable to her, Plaintiff's retaliation claim relates to her reassignment to the Wire Room, which is timely.

## V.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (Doc. No. 11) will be granted in part and denied in part.  Count I, the disability discrimination claim based on a failure to accommodate, and Count IV, constructive discharge, will be dismissed.  Count II, the disability discrimination claim based on retaliation under the Rehabilitation Act, and Count III, the sexual harassment claim for retaliation under the Title VII, will remain.  An appropriate Order follows.